IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

MICHAEL D. ADKINS,

                Plaintiff,

Vs.                                                                                     No. 22-2082-SAC-TJJ

SLM CORPORATION D/B/A/
SALLIE MAE INC., et al.,

                Defendants

MEMORANDUM AND ORDER

The case comes before the court on a motion to dismiss (ECF# 70) filed by the defendant Innovis Data Solutions, Inc. ("Innovis"). Fully briefed by both sides, the motion is ripe for ruling.

**PROCEDURAL BACKGROUND and FIRST AMENDED COMPLAINT**

The plaintiff Michael D. Adkins brought a limited action in Wyandotte County District Court asserting claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. ECF# 1-1. In his amended complaint, Adkins alleges the defendant credit reporting agencies ("CRAs"), including Innovis, furnished consumer credit reports on him which wrongly included his father's personal information on it. ECF# 69, ¶ 20. The plaintiff's father, born in 1960, also has the name of Michael D. Adkins. *Id*. at ¶ 17. His father co-signed five student loans for his sister between September 2014 and May 2018, and the defendant Sallie Mae Bank ("Sallie Mae") serviced these student loans. *Id*. at ¶ 18. The plaintiff is not personally liable for these loans that belong to his sister and father. ¶ 24. These student loans erroneously appeared on his credit report from Innovis and were inaccurately reported as his

1

debt. ¶¶ 20 and 25. These student loans are reported as a total debt of $81,156.00 and as having a negative status. ¶¶ 21 and 22. The plaintiff's efforts to secure a mortgage have been impeded because of these negative reports for loans that are not his. ¶ 27.

The plaintiff and his father notified Sallie Mae of this reporting and collection error and engaged in a direct dispute process with his father submitting an affidavit that he co-signed his daughter's student loans. ¶¶ 28 and 29. The plaintiff also disputed the negative Sallie Mae accounts with Innovis, but Innovis indicated the information would not be removed from his file. ¶¶ 31 and 32. The plaintiff alleges his "creditors and potential creditors have accessed Plaintiff's reports while the misreporting was on the credit report and were misinformed by Defendants about Plaintiff's creditworthiness." ¶ 34.

In count one, the plaintiff alleges that Innovis as one of the named defendant CRAs willfully and negligently violated 15 U.S.C. § 1681e(b) in failing to follow reasonable procedures to assure maximum possible accuracy in preparing the credit report that showed him a debtor of five student loan accounts. ¶ 47. He also asserts that Innovis willfully and negligently violated 15 U.S.C. § 1681i in failing to use reasonable procedures to reinvestigate his dispute and take adequate action to correct his consumer reports. ¶ 51.

**Rule 12(b)(6) Standards**

"A pleading is required to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)). All well-pleaded factual

2

allegations in the complaint are accepted as true and viewed in the light most favoring the plaintiff. *Farmer v. Kansas State University*, 918 F.3d 1094, 1102 (10th Cir. 2019). But, when the complaint alleges legal conclusions, those allegations are not subject to the same rule of being accepted as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).

"A complaint cannot survive a motion to dismiss unless it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Doe v. School District No. 1, Denver, Colorado*, 970 F.3d 1300, 1309 (10th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To be plausible on its face, the complaint's "factual allegations [must] allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "In determining the plausibility of a claim, we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to 'set forth a prima facie case for each element.'" *George v. Urban Settlement Services*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192–93 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Allegations "upon information and belief" may be made "so long as the complaint sets forth the factual basis of the belief." *Moore v. Kobach*, 359 F.Supp.3d 1029, 1040 (D. Kan. 2019) (quoiting *Jackson-Cobb v. Sprint United Management*, 173 F.Supp.3d 1139, 1149 (D. Colo. 2016)). Thus, such allegations

trigger the question whether they "are supported by specific facts asserted by the Complaint." *Id.*

In arguing its motion, Innovis refers to the exhibits attached to its answer (ECF# 21) and exhibits attached to Sallie Mae's motion to dismiss (ECF# 32) asserting they can be considered because the plaintiff's complaint references them and because they are "indisputably authentic." ECF# 71, p. 4 n.1. The rule in this circuit is that, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted). The plaintiff does not dispute Innovis's position or use of the exhibits but even references the same documents and facts in opposing dismissal. There being no contest over the documents and facts as referenced, the court will consider the same in deciding the pending motion. The court, however, is careful to consider only those facts directly referenced and those arguments correctly and timely presented.

**Failing to Follow Reasonable Procedures--15 U.S.C. § 1681e(b)**

"Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The plaintiff to prove a violation "must establish that: (1) the CRA failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered injury; and (4) the CRA's

failure caused his injury." *Wright v. Experian Information Solutions, Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015).

  Innovis notes that by statute, every CRA must "clearly and accurately disclose to the consumer" when requested, "[a]ll information in the consumer's file at the time of the request," with certain exceptions, and the "[i]dentification of each person . . . that procured a consumer report—for employment purposes" for the preceding two-year period or "for any other purpose" for the preceding one-year period. 15 U.S.C. § 1681g(a)(1) and (3)(A). Innovis attached to its answer a copy of its response to the plaintiff's request of October 28, 2021, for a copy of his consumer file. ECF# 21-1. In that file, Innovis states that they have "no record of recent requests" for the plaintiff's credit file from other businesses. ECF# 21-1, p. 9. On December 2, 2021, Innovis responded to the plaintiff's dispute showing the results of its investigation that verified the Sallie Mae accounts. ECF# 21-4. In that response, Innovis again reported that it had "no record of recent requests for" his credit file. ECF# 21-4, p. 9. The plaintiff filed this action on January 26, 2022. The plaintiff does not take issue with the court considering these documents as argued and presented by Innovis.

  For the § 1681e(b) claim, Innovis argues the plaintiff cannot show that Innovis published an inaccurate consumer report about him to a third party when Innovis's exhibits show no record of recent requests for his credit file. To prevail on this claim, the plaintiff must "'prove not only that [a CRA] failed to follow reasonable procedures . . . but also that it produced inaccurate "credit reports"—[a term of art] defined in the FCRA . . . as a communication of credit information to a third party—

5

that were the proximate cause of . . . injuries.'" *Stewart v. Equifax Information Services, LLC*, 320 F.Supp.3d 1186, 1210 (D. Kan. 2018) (quoting *Eller v. Trans Union, LLC*, 739 F.3d 467, 474 (10th Cir.), *cert. denied*, 572 U.S. 1101 (2013)). The court in *Stewart* granted summary judgment for the CRA as it was undisputed the CRA "never issued a consumer report about plaintiff to a third party about plaintiff in the two years before she filed this lawsuit." *Id*. Innovis asks the court to follow *Stewart* and dismiss, because "the fact that Innovis did not prepare any consumer *reports* about Plaintiff means that Plaintiff cannot state a claim that Innovis violated the FCRA's accuracy provision at § 1681e(b)." ECF# 71, p. 11. This is Innovis's exclusive argument on this claim.

      The plaintiff responds noting Innovis's single argument and pointing out that Innovis's documents don't cover the entire period for which credit requests could have been made. "Cherry-picking one year out of several to say that no consumer report was prepared on Plaintiff, and then using that singular example to justify threshold dismissal is insufficient." ECF# 79, p. 5. The plaintiff insists he is entitled to discovery on this issue.

      In reply, Innovis now expands its argument to challenge whether the plaintiff has pleaded "enough facts to state a" § 1681e(b) claim. ECF# 80, pp. 5-11. No longer just relying on facts shown by its documents that it did not publish a consumer report, Innovis contends now the plaintiff has failed to plead facts showing that it published a credit report to a third party and that it failed to follow reasonable procedures. The court finds these new arguments to be first raised in a reply brief and, therefore, are not considered for that reason. *Black & Veatch Corporation v.*

6

*Aspen Insurance (UK) Ltd.*, 378 F.Supp.3d 975, 989 (D. Kan. 2019). There was nothing to prevent Innovis from raising these arguments in its opening memorandum. The court agrees the plaintiff's amended complaint includes conclusory allegations that the inaccurate information has appeared "on his credit reports produced by . . . Innovis" (ECF# 69, ¶ 19), that "Plaintiff's creditors and potential creditors have accessed Plaintiff's reports while the misreporting was on the credit report and were misinformed by Defendants about Plaintiff's creditworthiness" (ECF# 69, ¶ 34), and that "Plaintiff has been impeded in his efforts to secure a mortgage because of the negative reports of Sallie Mae Bank accounts that do not belong to Plaintiff (ECF# 69, ¶ 27). Innovis certainly could have challenged these allegations in the first instance but chose not to. As for the argument that Innovis has made, the plaintiff is correct that Innovis's cited documents fail to establish as a matter of law that it never published a consumer report on the plaintiff during the entire actionable period. Nonetheless, the court fully expects the parties will cooperate in determining whether the plaintiff has a viable § 1681e(b) to pursue in light of the court's other ruling and/or any limited discovery. The defendant's motion to dismiss this claim is denied.

**Failing to Use Reasonable Procedures to Reinvestigate--15 U.S.C. § 1681i**

> A CRA's statutory duty to reinvestigate a consumer dispute entails:
>
> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . ., before the end of the 30-day period beginning on the date

7

> on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C.A. § 1681i(a)(1)(A). To prove a violation of this provision, the plaintiff must show "essentially the same elements as those for a § 1681e(b) claim—unreasonable procedures in reinvestigating a report, inaccuracy of the report, injury, and causation—in addition to proving they informed the CRA about the inaccuracy." *Wright*, 805 F.3d at 1242. The Tenth Circuit in *Wright* summarized court holdings on what constitutes a reasonable reinvestigation:

> Although § 1681i(a) does not define the term "reasonable reinvestigation," courts have consistently held a reasonable reinvestigation requires more than "making only a cursory investigation into the reliability of information that is reported to potential creditors." *Cortez* [*v. Trans Union, LLC*], 617 F.3d [688] at 713 [(3d Cir. 2010)]. Thus, "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." *Henson* [*v. CSC Credit Servs.*], 29 F.3d [280] at 286 [(7th Cir. 1994)]. "In short, when one goes from the § 1681e(b) investigation to the § 1681i(a) re investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly." *Cushman* [*v. Trans Union Corp.*], 115 F.3d [220] at 225 [(3d Cir. 1997)].
> 
> A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding a reasonable reinvestigation does not entail resolving "legal issue[s] that a credit agency ... is neither qualified nor obligated to resolve under the FCRA").

*Id.* In short, a CRA's duty to reasonably reinvestigate does not compel it to resolve what amounts to a collateral attack on the legal validity of the creditor's claim that the named consumer debtor is liable for this debt.

Innovis seeks dismissal arguing that the plaintiff's § 1681i claim for reinvestigation would have required it to resolve the ultimate legal issue whether the

plaintiff is liable for the student loans when as claimed by Sallie Mae the plaintiff's name and personal identifying information (social security number and date of birth) appear on the student loan applications and the plaintiff does not assert theft of identity or the unauthorized use of his identifiers by his father or sister. Innovis characterizes this to be primarily a legal dispute as opposed to a factual one, relying on *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008); *Carvalho v. Equifax information Services, LLC*, 629 F.3d 876 (9th Cir. 2010); *Brill v. Transunion LLC*, 838 F.3d 919 (7th Cir. 2016), and *Wright v. Experian Information Solutions, Inc.*, 805 F.3d at 1242.

In response, the plaintiff attempts to distance himself from this rule and its precedent by saying his dispute is not over the legal validity of any contracted debt; instead, his claim is that he never was a party to the contract. The plaintiff would have the court read the legal precedent as limited to those instances when the consumer acknowledges the contracted debt in some way but contests its continuing legal validity as opposed to those instances when the dispute is over factual inaccuracies with the debt itself.  The plaintiff argues his dispute is factual, because he submitted affidavits denying that he co-signed the student loans and showing that he and his father shared the same name and that his father admitted to co-signing the student loans. The plaintiff regards his dispute as factual in character and as coming within a CRA's ken to resolve from a reasonable investigation. The plaintiff's position is that cases involving identity theft, misreported debts or "not mine" disputes are necessarily factual in nature and not subject to dismissal under this rule. The

plaintiff, however, cites no case law that directly or generally supports this last position.

In reply, Innovis denies that a reasonable investigation on its part could discover that the plaintiff is not a co-signer of his sister's student loans and emphasizes three circumstances here. The plaintiff's identifiers appear on the student loan. The plaintiff has not filed an identity theft report and does not allege a theft to have occurred. Sallie Mae has verified the student loans as belonging to the plaintiff.  Innovis argues that for it to determine whether the plaintiff signed the student loans would require asking the plaintiff, his father, and his sister additional questions under oath on how the plaintiff's identifiers came to be used on the five separate student loans between 2014 and 2018, by mistake or identity theft or neither.

In reply, Innovis criticizes the plaintiff's efforts to distinguish the cited court of appeals decisions as strained and unconvincing. In particular, the plaintiff cannot overcome the sound premise in these decisions for requiring him to resolve his dispute first with Sallie Mae who is in the best position to respond to his assertion that he did not sign these student loans. Innovis highlights the factual similarity between the plaintiff here disputing that he signed the student loans and the plaintiffs in *DeAndrade* and *Brill* contesting that they signed the respective debt instruments in question. Innovis keys on how both courts emphasized the disputes were not the kind that CRAs should be obligated to resolve under the FCRA. *See DeAndrade*, 523 F.3d at 68 (whether the plaintiff ratified the loan is not a matter "that could have been uncovered by a reasonable investigation, but rather a legal issue that a credit agency

such as Trans Union is neither qualified nor obligated to resolve under the FCRA." (citation omitted)); *Brill*, 838 F.3d at 921 (the creditor, not the CRA, is in "the better position to determine the validity" of the lease by verifying the accuracy of the signature. It's enough here that the CRA asked the creditor to confirm the accuracy of the lease as the CRA had nothing to do with the document.). Innovis soundly argues these holdings are in line with the Tenth Circuit's decision in *Wright* where the plaintiff disputed in part that the federal tax lien applied to him personally and that the CRA should have determined this in its investigation. On this issue, the court held:

> The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed. See 15 U.S.C. §§ 1681i(a)(6)(B)(iii), (iv); (b)-(c) (stating that, upon reinvestigation, CRAs must provide consumers two notices, one stating that a consumer may request any reasonably available contact information from the furnisher of the information and the other stating "that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information"); *Carvalho*, 629 F.3d at 892 (construing 15 U.S.C. § 1681i and determining "a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level"). The CRAs informed Mr. Wright of these two avenues of relief, and Mr. Wright pursued neither.
> . . . .
> In *DeAndrade*, the plaintiff-consumer had financed the purchase of windows for his home. 523 F.3d at 63. He later discovered the bank had mortgaged his home by, he claimed, forging his and his wife's signatures. *Id*. He refused to make payments on the mortgage. *Id*. at 64. The bank notified the CRAs of the unpaid mortgage, which the CRAs reported on the consumer's credit report. *Id*. The consumer then requested a reinvestigation. *Id*. The First Circuit, construing 15 U.S.C. § 1681i, upheld the district court's determination that the reinvestigation was reasonable because the bank produced documentation of the mortgage and the question of whether the consumer "was entitled to stop making those payments is a question for a court to resolve . . . not a job imposed upon consumer reporting agencies by the FCRA." *Id*. at 68.
> Like the consumers in *Carvalho* and *DeAndrade*, Mr. Wright's argument would require the CRAs to do more than a reasonable reinvestigation requires. As part of their reinvestigation, the CRAs examined the NFTL and determined it applied to Mr. Wright because his name was listed. Mr. Wright insists the CRAs must go further and determine the validity of the tax lien. As the foregoing cases demonstrate, that question is a matter he should take up with the IRS.

*Wright*, 805 F.3d at 1245. In short, the Tenth Circuit follows the other courts in holding that a CRA's investigation is not unreasonable just because it failed to make a legal determination whether the debt validly applies to the debtor when the debtor's name is listed on it. The court finds Innovis's arguments as summarized to be persuasive in showing this line of precedent applicable here and the plaintiff's opposing arguments unconvincing.

After studying all the cases cited by the parties and the parties' arguments for applying or distinguishing them, the court is convinced that the plaintiff has not pleaded a plausible claim that Innovis unreasonably investigated the plaintiff's dispute under the circumstances uncontested here. Specifically, the plaintiff disputed that he was the Michael D. Adkins who co-signed these student loans even though, 1) his name and personal identifiers appeared on all five loan applications between 2014 and 2018, 2) Sallie Mae confirmed the loans were connected to the plaintiff, 3) the plaintiff and father affirmed the father to be the co-signor but the father's personal identifiers were not used on the loan applications, and 4) the plaintiff did not assert theft or misuse of his personal identifiers. The court finds that § 1681i does not compel Innovis under these circumstances to adjudicate whether the plaintiff is the same Michael D. Adkins who co-signed the student loans. This would require Innovis to assume the role of a tribunal in determining who co-signed the loans under some factually involved circumstances. Like a tribunal, Innovis would have had to go beyond the loan applications and documentation in the credit file and to gather for its review and evaluation all relevant proof for determining who co-signed each of the five student loans. This would include determining who was

12

responsible for adding the plaintiff's identifiers to all five loans, who factually signed or authorized the signature of Michael D. Adkins, as co-signor of the loans, and who did Sallie Mae representatives understand to be the co-signor on the student loans when approved.

Only after such a far-reaching investigation could Innovis have been able to determine whether the student loan debt appearing on the plaintiff's report validly applies to the plaintiff. Obviously, Sallie Mae, "stands in a far better position to make a thorough investigation of a disputed debt," than a CRA like Innovis on reinvestigation. *Denan v. Trans Union LLC*, 959 F.3d 290, 297 (7th Cir. 2020) (internal quotation marks and citation omitted). The plaintiff cites no persuasive authority showing this inaccuracy is one that requires a CRA to go further than to examine the loan documents and to confirm them with Sallie Mae. *See Wright*, 805 F.3d at 1245. The plaintiff's claimed inaccuracy is not "straightforward, fact-based, and could be resolved through a reasonable investigation." *Denan*, 959 F.3d at 297. Instead, Innovis would have to engage in a far-reaching investigation of matters beyond its control and then act as a legal tribunal in resolving factual issues that ostensibly could require disregarding the contents of legal documents. As the plaintiff has argued, whether he entered the student loan contracts is a question of fact not to be resolved summarily on a motion to dismiss but best reserved for resolution at trial. ECF# 79, p. 7. Or, as the plaintiff has argued, if Sallie Mae had filed a motion to compel arbitration, this court would have proceeded with an expedited trial "to determine whether the parties factually entered into an agreement." ECF# 79, p. 13. If the inaccuracy involves factually disputed matters to be adjudicated by a tribunal, how then should

13

we call the same inaccuracy something for Innovis simply to resolve as part of its own investigation as a credit reporting agency. The court believes the asserted inaccuracy here to be a non-adjudicated factual dispute over more than "the contents of a document, the existence and easily ascertained meaning of court orders, or some other truly objective matter." *Soyinka v. Equifax Information Services, LLC*, 486 F.Supp.3d 1232, 1238 (N.D. Ill. 2020) (citations omitted), *aff'd, Chuluunbat v. Experian Information Solutions, Inc.*, 4 F.4th 562 (7th Cir. 2021). Thus, the plaintiff did not have a straightforward dispute of a discrete issue that Innovis, rather than a legal tribunal, could be expected to resolve.

In arguing that his dispute is within a CRA's competence to resolve, the plaintiff points to the dispute being resolvable based on his own sworn statement and that of his father. The plaintiff does not explain how the reasonable determination of his dispute turns only on what he presents as relevant evidence or even how it is within a CRA's competence to know what evidence would be relevant and conclusive in Sallie Mae's determination of who is a co-signer of a student loan debt. ECF# 79, pp. 11-12. Thus, the plaintiff fails to cite any case law showing that his disputed inaccuracy comes within a CRA's competence to resolve through a reasonable investigation.

One of the cases coming closest to the case at bar is *Brill*. The Seventh Circuit there affirmed dismissal of a CRA's failure to conduct a reinvestigation claim when the consumer disputed that his signature on the lease extension was not his but a forgery by his former girlfriend. 838 F.3d at 920-21. The plaintiff Brill alleged the CRA's investigation was inadequate for not inquiring from the creditor's employees

who signed the document and for not retaining an expert to determine if the signature was forged. *Id*. at 920. The Seventh Circuit held in part:

> The district court dismissed the suit (precipitating this appeal) for failure to state a claim, on the ground that TransUnion had no duty to verify the accuracy of Brill's signature on the Toyota lease, because Toyota, as the lessor, was in a better position to determine the validity of its own lease. That's to put it mildly. The lease extension that may have been signed by Pfeifer rather than Brill was a document created by Toyota. TransUnion had had nothing to do with it, which is why upon receiving Brill's challenge to the accuracy of its credit report it had asked Toyota to confirm (or deny) the accuracy of the lease purportedly signed by Brill. That was an appropriate procedure, especially as TransUnion couldn't readily locate any other document that might have resolved the issue. Cf. *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994).
> . . . .
> . . . . Forcing a credit reporting agency to hire a handwriting expert in every case of alleged forgery would impose an expense disproportionate to the likelihood of an accurate resolution of the dispute over whether it was indeed forgery. And so the Fair Credit Reporting Act's provisions for identity theft, 15 U.S.C. §§ 1681c–1, c–2, sensibly ask persons who believe they are or may be victims of credit fraud to report to the police before turning to the credit reporting agency. As far as we know, Brill didn't do that.
> . . . .
> . . . And it might well be unduly burdensome for TransUnion to ask Toyota to identify, and put TransUnion in touch with, the employees. In any event TransUnion could not expect Toyota to accede to such a request. No company willingly tells another company: "you want to interview my employees in order to see whether they violated rights of someone [Brill] who sued me? No problem." Instead it says: "Forget it."

*Brill*, 838 F.3d at 921-22. As demonstrated in *Brill*, that the consumer is only disputing his signature does not make the inaccuracy straightforward, discrete, and within the CRA's ken.

Finally, the plaintiff would have the court end its analysis with whether his dispute is factual or legal in nature. The cases discussed above show this approach oversimplifies the question. Moreover, the Seventh Circuit's recent decision in *Chuluunbat v. Experian Information Solutions, Inc.*, 4 F.4th 562 (7th Cir. 2021),

15

recognizes that while clear lines have not been drawn for the "dichotomy between" factual and legal inaccuracies, the courts have set out "helpful guideposts." *Id*. at 567. The plaintiffs in the consolidated appeals in *Chuluunbat* were arguing "that whether the creditors were assigned, and now own, their debts is a factual question." *Id.* After discussing some of the precedent, the court observed:

> These examples show that the central question is whether the alleged inaccuracy turns on applying law to facts or simply examining the facts alone. Consumer reporting agencies are competent to make factual determinations, but they do not reach legal conclusions like courts and other tribunals do. *Denan*, 959 F.3d at 295. Courts sometimes employ different actors to help answer certain questions, but the ultimate result is a legal determination (e.g., that a party is liable). That means whether something is considered a factual question in a court does not resolve whether it is an inaccuracy under the FCRA. Accordingly, *Chemetall* [*GMBH v. ZR Energy, Inc.*, 320 F.3d 714 (7th Cir. 2003)]—in which this court held, applying Illinois law, that the intent to enter an assignment is a question of fact in court—does not decide this case.
>
> The claims here differ from the purely legal disputes at issue in *Denan*. Although the plaintiffs in *Denan* were explicitly attempting to collaterally attack the legality of their debts through the FCRA's reinvestigation provision, the plaintiffs in these consolidated cases contest who owns their debts, not their legal validity.
>
> . . . .
>
> Sometimes, when a consumer claims a debt is not owed, that presents a factual question. This could occur if the consumer argues that the furnisher has factually misidentified him—say with the wrong social security number. But consumer reporting agencies will not be required to reinvestigate such claims if the investigation primarily requires them to make a legal judgment or is otherwise outside of their competency. See *Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016) (holding that consumer reporting agency was not required to hire handwriting expert to determine whether plaintiff's signature was forged on loan agreement as plaintiff claimed).
>
> The alleged inaccuracies here necessarily involve interpreting legal rights to a debt and making legal judgments. In each of these cases, the consumer reporting agencies reached out to the creditors and asked them to confirm ownership of the debts. Each creditor did so. If the plaintiffs presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts have been adjudicated, the investigation may have been factual in nature. But their broad assertion that the creditors do not own their debts necessarily required the consumer reporting agencies to make a legal determination about whether the plaintiffs or the creditors are right about the ownership of the debts.

*Chuluunbat*, 4 F.4th at 568-69. The plaintiff's alleged inaccuracies would involve Innovis in making legal judgments over Sallie Mae's loan procedures and applying them to the facts learned after taking sworn statements from the plaintiff, his father and sister, and Sallie Mae representatives. Following the reasoning of the cases discussed and applied above, the court concludes the plaintiff is unable to claim that his disputed inaccuracy is one which Innovis could be expected to resolve in a reasonable investigation under the uncontested circumstances here. Innovis is entitled to dismissal of the § 1681i claim against it.

IT IS THEREFORE ORDERED that Innovis's motion to dismiss (ECF# 70) is denied as to the § 1681e(b) claim but granted as to the § 1681i claim.

Dated this 29th day of July, 2022, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge